UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MONROE GROCERY, INC., a          :     CIVIL NO: 3:17-CV-00922
Pennsylvania Corporation, and    :
FRANCISCO TAVAREZ, an            :      (Judge Mannion)
Individual,                      :
                                 :     (Chief Magistrate Judge Schwab)
                Plaintiffs        :
                                 :
        v.                       :
                                 :
UNITED STATES OF AMERICA,         :
GILDA TORRES, Section Chief       :
of FNS, and SONNY PERDUE,         :
Secretary of Agriculture,         :
                                 :
                Defendants        :
                                 :


**REPORT AND RECOMMENDATION**


**I.  Introduction.**

        Plaintiffs, Monroe Grocery, Inc. and Francisco Tavarez, bring claims against

the United States and two officials of the United States Department of Agriculture.

The United States filed a motion to dismiss or, in the alternative, for summary

judgment.  For the reasons that follow, we recommend that the Court grant in part

and deny in part that motion.  We also recommend that the Court grant Monroe

Grocery and Tavarez leave to file a second amended complaint.

## II.  Background and Procedural History.

When they began this action, Monroe Grocery and Tavarez were proceeding *pro se*, but on December 12, 2017, they, through counsel, filed an amended complaint.  The amended complaint names as defendants: (1) the United States of America; (2) Gilda Torres, Section Chief of the Food & Nutrition Service (FNS); and (3) Sonny Perdue, the Secretary of the United States Department of Agriculture.  Monroe Grocery and Tavarez allege the following facts in their amended complaint.

Monroe Grocery and Tavarez own and operate a small grocery store in West Hazelton, Pennsylvania, named Monroe Grocery, Inc. *Doc. 15* at ¶ 1.  Many households in the Congressional District in which that store is located are participants in the Supplemental Nutrition Assistance Program (SNAP), which the FNS of the United States Department of Agriculture oversees. *Id*. at ¶ 2.  SNAP provides food benefits (formerly called food stamps) to participants who meet certain eligibility requirements. *Id*. at ¶ 18.  SNAP benefits are transmitted to, and used by participants, through an Electronic Benefits Transfer (EBT) card, which functions like a debit card. *Id*.

Monroe Grocery was a SNAP retailer, and as such was governed by SNAP regulations, including 7 C.F.R. § 278.6, which provides for, among other things, the disqualification or suspension of retailers who violate SNAP regulations. *Id*. at

¶¶ 19–20.  Retailers typically violate SNAP in two ways: (1) by selling ineligible items to SNAP participants; and (2) by trafficking in SNAP benefits. *Id*. at ¶ 21.  7 C.F.R. § 271.2 defines various methods of trafficking in SNAP benefits including:

> (1)  The buying, selling, stealing, or otherwise effecting an exchange of SNAP benefits issued and accessed via Electronic Benefit Transfer (EBT) cards, card numbers and personal identification numbers (PINs), or by manual voucher and signature, for cash or consideration other than eligible food, either directly, indirectly, in complicity or collusion with others, or acting alone.

*Id*. at ¶ 22.  A retailer found to have trafficked in SNAP benefits either is permanently disqualified from participation in the program or is issued a Civil Money Penalty. *Id*. at ¶¶ 23–24.  Additionally, a retailer found to have trafficked in SNAP benefits and disqualified from participation is added to a list of persons disqualified from the SNAP program and is ineligible to do further work with any agency. *Id*. at ¶¶ 23, 25.  The disqualification is also reported to credit and background-check agencies, which can have a substantial impact on the storeowner. *Id*. at ¶ 25.

FNS uses a computer program called the ALERT system, which identifies transaction patterns of SNAP purchases and flags stores that have transactions that exceed certain thresholds. *Id*. at ¶¶ 26–27.  Once the ALERT system flags a store, the store is referred to the Investigative Analysis Branch for further review. *Id*. at ¶ 27.  A section chief, like defendant Torres, then assigns an analyst to review the

case and to compile evidence against the store. *Id*. After the evidence is compiled, the section chief sends a formal charging letter to the store asking for an explanation regarding the transactions and giving the store ten days to respond. *Id*. at ¶ 28. The section chief then reviews all the evidence and circumstances and decides whether to disqualify the store from SNAP participation. *Id*. at ¶ 29. The store may seek administrative review of the section chief's decision. *Id*. at ¶ 30. At the administrative-review level, the Administrative Review Officer (ARO) collects statements and evidence from the store, submits it to the Section Chief and analyst to determine whether the new evidence would change their decision, and, then, the ARO issues a final decision. *Id*. at ¶¶ 31–32.

Here, on December 20, 2016, defendant Torres sent Monroe Grocery and Tavarez a Charging Letter pursuant to 7 C.F.R. § 278.6, alleging that they violated SNAP regulations in their acceptance of SNAP benefits from participants based on transactions that occurred between May of 2016 and October of 2016. *Id*. at ¶ 4. Torres subsequently determined that Monroe Grocery had trafficked in SNAP benefits. *Id*. at ¶ 5. Monroe Grocery and Tavarez were permanently disqualified from SNAP as an authorized retailer. *Id*. As a result, Monroe Grocery lost a considerable portion of its gross revenue and a substantial portion of its clientele. *Id*. at ¶ 6. Before the Charging Letter, Monroe Grocery had never received a warning letter, disciplinary action, or any other correspondence from the United

States Department of Agriculture indicating that it was improperly accepting benefits or improperly operating. *Id*. at ¶ 3.

Monroe Grocery and Tavarez filed an Administrative Review in accordance with 7 C.F.R. § 279. *Id*. at ¶ 7. They took issue with the disqualification process, the inaccuracy of the evidence against them, and the lack of direct evidence of any SNAP violations. *Id*. They presented arguments and evidence in support of their position. *Id*. On April 12, 2017, the ARO denied their appeal. *Id*. at ¶ 8.

In this case, Monroe Grocery and Tavarez seek to challenge the decision permanently disqualifying them from the SNAP program. 7 U.S.C.A. § 2023(a)(13) provides for judicial review to challenge such a final determination decision. But a complaint under that section must be filed within 30 days after delivery or service of the final administrative decision. 7 U.S.C.A. § 2023(a)(13). Here, Monroe Grocery and Tavarez concede that they filed this case more than 30 days after delivery or service of the final administrative decision. *See Doc. 38* at 6 ("To be flatly forthright, there is no denying that the Plaintiffs' initial complaint was filed after the statutory deadline had passed. The dates are what they are, and the math is immutable."). Thus, instead of proceeding under § 2023(a)(13), they

present constitutional claims.  More specifically, they present an equal protection

claim and a substantive due process claim under the Fifth Amendment.[1]

Count I of the Amended Complaint is an equal protection claim.  Monroe

Grocery and Tavarez contend that they were subject to selective enforcement of

the SNAP regulations. *Doc. 15* at 10.  They allege that for purposes of enforcement

of the SNAP regulations, the United States and defendant Perdue created two

classifications of retailers—privately owned stores and publicly held corporations.

*Id*. at ¶ 40.  They allege that the United States acknowledged in a 2017 report that

stores of all sizes have been found to traffick in SNAP benefits at varying rates, but

despite the thousands of stores that allegedly trafficked in SNAP benefits, the

United States stated that there were zero cases in which publicly held corporations

were found to have trafficked. *Id*. at ¶¶ 40–42.  According to Monroe Grocery and

Tavarez, no publicly held corporations were found to have trafficked in SNAP

benefits because the United States chose not to charge such publicly held

---

[1] Although Monroe Grocery and Tavarez mention 42 U.S.C. § 1983 and the
Fourteenth Amendment in their amended complaint, because the defendants in this
case are not state actors and did not act under color of state law, neither 42 U.S.C.
§ 1983 nor the Fourteenth Amendment are applicable. *See Hindes v. F.D.I.C.*, 137
F.3d 148, 158 (3d Cir. 1998) ("Because section 1983 provides a remedy for
violations of federal law by persons acting pursuant to state law, federal agencies
and officers are facially exempt from section 1983 liability inasmuch as in the
normal course of events they act pursuant to federal law."); *Martucci v. Borough*,
No. CV 3:17-1671, 2018 WL 1755728, at *2 n.3 (M.D. Pa. Apr. 10, 2018) (noting
that "the Fourteenth Amendment does not apply to plaintiff's claims against
Ashmawy since plaintiff alleges that he is a federal officer").

corporations. *Id*. at ¶ 43. They contend that the United States does not pursue cases against large supercenter stores, which are often publicly traded corporations (such as Walmart), because it believes they will police themselves. *Id*. at ¶ 44.[2] They further contend that the United States does not send out charging letters to the larger companies and stores. *Id*. at ¶ 45. Thus, publicly held corporations, like

---

[2] Monroe Grocery and Tavarez attached excerpts from deposition transcripts in other cases as exhibits to their amended complaint. They cite such exhibits in support of this and other allegations in the amended complaint. Federal Rule of Civil Procedure 10(c) provides that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." But not every document is a "written instrument" under Fed.R.Civ.P. 10(c). *See Rose v. Bartle*, 871 F.2d 331, 339 n.3 (3d Cir. 1989) (concluding that an affidavit is not a "written instrument" under Rule 10(c)); *J.B. Hunt Transp., Inc. v. Liverpool Trucking Co.*, 1:11-CV-1751, 2013 WL 3208586, at *3 n.4 (M.D. Pa. June 24, 2013) (refusing to consider deposition transcripts attached to the plaintiff's motion for leave to amend and referenced in the proposed third amended complaint). Rather, written instruments under Rule 10(c) "consist largely of documentary evidence, specifically, contracts, notes, and other '"writing[s] on which [a party's] action or defense is based.'" *Rose*, 871 F.2d at 339 n.3 (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1327, at 489). "Furthermore, a 'written instrument' may be characterized as a 'legal document that defines rights, duties, entitlements, or liabilities, such as a statute, contract, will, promissory note, or share certificate.'" *Calpin v. Lackawanna Cty.*, 3:16-CV-2013, 2017 WL 590277, at *5 (M.D. Pa. Feb. 14, 2017) (quoting *Smith v. Hogan*, 794 F.3d 249, 254 (2d Cir. 2015)). Thus, "[e]xhibits solely containing evidentiary matter, such as depositions, are not considered 'written instruments' under Rule 10(c) and are typically excluded from consideration of the pleadings." *J.B. Hunt,* 2013 WL 3208586, at *3 n.4. "'[L]engthy exhibits containing . . . evidentiary matter should not be attached to the pleadings.'" *Rose*, 871 F.2d at 339 n.3 (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1327, at 489). Because the deposition transcripts attached to the amended complaint are not written instruments under Rule 10(c), we will not consider those transcripts. We will, however, consider the allegations in the amended complaint that are based on those transcripts.

Walmart and Target, are exempt-in-practice from being charged with trafficking in

SNAP benefits. *Id*. at ¶ 46.

According to Monroe Grocery and Tavarez, the determination that publicly

held corporations[3] should not be charged with SNAP violations is arbitrary; it is

not that such publicly held stores do not raise suspicion, warrant investigation, or

warrant the issuance of charging letters, but the United States "has made a

conscious choice to afford them opportunity and ability apart from what small

stores, like the Plaintiffs have." *Id*. at ¶ 49.   Monroe Grocery and Tavarez base

their equal protection claim on the following:

> (1) "[t]here are publicly held businesses that fit the same SNAP
> Retailer size and other categorizations (aside from ownership
> type) as the Plaintiff's store";
>
> (2) the United States enforced the SNAP requirements on
> Monroe Grocery and Tavarez because they were a "privately
> held business" rather than a "publicly held business";
>
> (3) if they had been a publicly held entity, the United States
> would not have issued a charging letter;
>
> (4) "[t]he defendants deliberately chose to enforce SNAP
> violation sanctions against the Plaintiffs' private business
> entities, but under identical circumstances would chose [sic] not
> to enforce SNAP violations sanctions against a publicly held
> store";
>
> (5) the distinction between privately held and publicly held
> entities is arbitrary because there is no evidence that "a

---

[3]  Actually, Monroe Grocery and Tavarez refer here to privately held stores, but from the context of all the other allegations that appears to have been a scrivener's error.  We assume that, as set forth above, they meant publicly held corporations.

difference exists in the link between the different ownership structures and the existence of trafficking" ("Ownership status has no relevant link to the existence [of] SNAP violations, except that which falsely appears in statistics that fail to account for the conscious decision of the Defendants to avoid charges to publicly held companies.");

(6) while the SNAP regulations are neutral on their face, the defendants apply them to similarly situated retailers in an "unequal and unjust" manner; and

(7) the defendants' selective enforcement of the SNAP regulations have harmed them.

*Id*. at ¶ 50. Monroe Grocery and Tavarez request the court to strike down the disqualification issued by the defendants to their store, to require the defendants fairly to apply the regulations to all store types, and to award them damages. *Id*. at ¶51 and wherefore clause on pp. 17–18.

Count II of the amended complaint is titled as a substantive due process claim. *Id*. at p. 18. Monroe Grocery and Tavarez allege that although "the ALERT system cannot distinguish between different types of SNAP violations (such as sale of ineligible items, issuance of credit and trafficking)," defendant Torres, nevertheless, charges all cases originating from the ALERT system as trafficking cases. *Id*. at ¶¶ 54–55. And she, unlike other section chiefs, has found that trafficking occurred in 100% of those cases for which she was responsible regardless of the retailers' explanation or defense. *Id*. at ¶¶ 56–57. According to Monroe Grocery and Tavarez, this shows that Torres is biased in favor of the United States, and this bias directly resulted in the removal of their SNAP license

9

"as well as that of potentially more than a thousand other stores since Ms. Torres became a Section Chief." *Id*. at ¶ 58. They allege that they discovered Torres's bias only after the administrative proceedings concluded. *Id*. at ¶ 59. Monroe Grocery and Tavarez request the court to overturn the disqualification issued by Torres and the other defendants as unconstitutional and to "award such further relief as permitted by law." *Id*. at wherefore clause on p.21.

On December 26, 2017, the United States filed a motion to dismiss the amended complaint or, in the alternative, for summary judgment. We stayed all case management deadlines pending the resolution of that motion. *See Doc. 25*. The United States argues that it has not waived its sovereign immunity as to constitutional claims seeking money damages. Similarly, the United States argues that the claims for damages against defendants Torres and Perdue in their official capacities are really claims against the United States, and so sovereign immunity also bars those claims. The United States also argues that if the Court does not dismiss the claims for damages against it or against defendants Torres and Perdue in their official capacities based on sovereign immunity, it should nevertheless dismiss the equal protection claim for failure to state a claim upon which relief can be granted and it should either dismiss the due process claim for failure to state a claim upon which relief can be granted or, in the alternative, grant summary judgment as to the due process claim. The United States submitted a statement of

10

material facts, and it filed the underlying administrative record, which is more than

450 pages.  We note that the motion to dismiss or, in the alternative, for summary

judgment is not brought on behalf of defendants Torres and Perdue in their

individual capacities.[4]

In response, Monroe Grocery and Tavarez filed a brief in opposition to the

United States' motion and a Rule 56(d) declaration, contending that considering

summary judgment at this stage of proceedings would be premature and prejudicial

since they have not had the opportunity to conduct discovery.  The United States

then filed a reply brief.

## III.  Discussion.

### A.  Sovereign immunity bars the claims for damages against the United States and against defendants Torres and Perdue in their official capacities.

The United States contends that the Court should dismiss the claims for

damages against it because it has not waived sovereign immunity as to those

claims.  Similarly, defendants Torres and Perdue contend that the Court should

---

[4]  Federal Rule of Civil Procedure 4(i)(3) provides that "[t]o serve a United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf (whether or not the officer or employee is also sued in an official capacity), a party must serve the United States and also serve the officer of employee under Rule 4(e), (f), or (g)." The United States notes that defendants Torres and Perdue have not been personally served with the amended complaint, and counsel for the United States does not represent them in their individual capacities. *See Doc. 39* at 2 n.1.

dismiss the claims for damages against them in their official capacities because sovereign immunity bars those claims.

The United States and defendants Torres and Perdue in their official capacities contend that the Court should dismiss the damages claims against them under Fed.R.Civ.P. 12(b)(6) for failure to state a claim. But their argument raises sovereign immunity, which implicates the Court's subject-matter jurisdiction. *Treasurer of New Jersey v. U.S. Dep't of Treasury*, 684 F.3d 382, 395–96 (3d Cir. 2012) ("Without a waiver of sovereign immunity, a court is without subject matter jurisdiction over claims against federal agencies or officials in their official capacities."). Thus, Fed.R.Civ.P. 12(b)(1), is the applicable rule. Challenges to subject-matter jurisdiction under Fed.R.Civ.P. 12(b)(1) may be "facial" or "factual." *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 811 (3d Cir. 2016). A facial attack, such as the one presented here, contests the sufficiency of the pleadings. *Id.* When there is a facial attack, "we apply the same standard as on review of a motion to dismiss under Rule 12(b)(6)." *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625,633 (3d Cir. 2017). The plaintiff has the burden of persuading the court it has jurisdiction. *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016).

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *U.S. v. Mitchell,*

463 U.S. 206, 212 (1983).  "Absent a waiver, sovereign immunity shields the

Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471,

475 (1994).  "Official-capacity suits . . . 'generally represent only another way of

pleading an action against an entity of which an officer is an agent.'" *Kentucky v.*

*Graham,* 473 U.S. 159, 165-66 (1985) (quoting *Monell v. New York City Dept. of*

*Social Services,* 436 U.S. 658, 690 n. 55 (1978)).  Thus, claims against the

defendants in their official capacities are really claims against the United States,

and absent a waiver of sovereign immunity, such claims are barred.

Here, Monroe Grocery and Tavarez are seeking money damages as well as

injunctive relief.  But the United States and defendants Torres and Perdue in their

official capacities have moved for dismissal based on sovereign immunity only as

to the claims for damages.[5]  Such claims for money damages are *Bivens* claims.[6]  It

is well settled, however, that sovereign immunity bars *Bivens* actions against the

---

[5]  As the United States and defendants Torres and Perdue in their official capacities have not argued that sovereign immunity bars the claim for injunctive relief against them, we make no determination on that issue.  Also, because defendants Torres and Perdue have not been served with the amended complaint, we make no determination as to the viability of the claims against them in their individual capacities.

[6]  *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971).  In *Bivens*, the Supreme Court "recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001).  "[A]ctions brought directly under the Constitution against federal officials have become known as '*Bivens* actions.'" *Vanderklok v. United States*, 868 F.3d 189, 198 (3d Cir. 2017).

13

United States and, by extension, against federal officials sued in their official capacities. *Hairston v. Miller*, 646 F. App'x 184, 187 (3d Cir. 2016) (holding that to the extent former federal prisoner "sought monetary damages against the defendants in their official capacities, dismissal of those claims based on sovereign immunity was proper"); *Tucker v. Sec'y of Health & Human Servs.*, 588 F. App'x 110, 115 (3d Cir. 2014) (concluding that "a *Bivens* action cannot be maintained against a federal official in her official capacity since such an action would essentially be one against the United States"); *Perez-Barron v. United States*, 480 F. App'x 688, 691 (3d Cir. 2012) (holding that *Bivens* claims against the "United States, FBOP, and the individual FBOP employees in their official capacity . . . are barred from suit by the doctrine of sovereign immunity").  Thus, sovereign immunity bars the *Bivens* claims against the United States and against defendants Torres and Perdue in their official capacities.

### B.  The claims for injunctive relief.

Although sovereign immunity bars the *Bivens* claims against the United States and against defendants Torres and Perdue in their official capacities, Monroe Grocery and Tavarez also seek injunctive relief in the form an order striking or overturning their disqualification as a SNAP retailer.  Neither the United States nor defendants Torres and Perdue in their official capacities argue

that sovereign immunity bars the claims for injunctive relief.[7]  Thus, we must

proceed to review the United States' arguments for why the amended complaint

fails to state a claim upon which relief can be granted.

In accordance with Fed.R.Civ.P. 12(b)(6), the court may dismiss a complaint

for "failure to state a claim upon which relief can be granted."  When reviewing a

motion to dismiss, "[w]e must accept all factual allegations in the complaint as

true, construe the complaint in the light favorable to the plaintiff, and ultimately

determine whether plaintiff may be entitled to relief under any reasonable reading

of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010).  In

---

[7]  Because the United States has not argued that sovereign immunity bars the
claims for injunctive relief against it or against defendants Torres and Perdue in
their official capacities, we make no determination as to that issue.  But we note
that 5 U.S.C. § 702 provides:

> An action in a court of the United States seeking relief other
> than money damages and stating a claim that an agency or an
> officer or employee thereof acted or failed to act in an official
> capacity or under color of legal authority shall not be dismissed
> nor relief therein be denied on the ground that it is against the
> United States or that the United States is an indispensable party.
> The United States may be named as a defendant in any such
> action, and a judgment or decree may be entered against the
> United States[.]

*See also Jaffee v. United States*, 592 F.2d 712, 718 (3d Cir. 1979) (holding that
"section 702, when it applies, waives sovereign immunity in "nonstatutory" review
of agency action under [28 U.S.C.] section 1331"); *Treasurer of New Jersey v. U.S.
Dep't of Treasury*, 684 F.3d 382, 397 (3d Cir. 2012) (agreeing "with opinions of
several courts of appeals that have clarified that the waiver of sovereign immunity
in section 702 extends to all nonmonetary claims against federal agencies and their
officers, regardless of whether or not the cases seek review of "agency action" or
"final agency action" as set forth in section 704"of the Administrative Procedures
Act).

making that determination, we "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.

"A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a)." *I.H. ex rel. D.S. v. Cumberland Valley Sch. Dist.*, 842 F. Supp. 2d 762, 769–70 (M.D. Pa. 2012). "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677–78 (2009). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the plaintiff's claim is and of the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Detailed factual allegations are not required, but more is required than labels, conclusions, and a formulaic recitation of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). "A complaint has to "show" such an entitlement with its facts." *Id.*

In considering whether a complaint fails to state a claim upon which relief can be granted, the court must accept as true all well-pleaded factual allegations in the complaint, and the court must draw all reasonable inferences from the facts alleged in the light most favorable to the plaintiff. *Jordan v. Fox Rothschild,*

16

*O'Brien & Frankel, Inc.,* 20 F.3d 1250, 1261 (3d Cir. 1994).  But a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997).  A court also need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).

Following *Twombly* and *Iqbal,* a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation.  In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Santiago v. Warminster Tp.,* 629 F.3d 121, 130 (3d Cir. 2010) (footnote and citations omitted) (quoting *Iqbal,* 556 U.S. at 675, 679).

### 1. The Court should not dismiss the equal protection claim.

Monroe Grocery and Tavarez assert an equal protection claim based on the alleged policy of treating publicly traded corporations differently from privately owned companies for purpose of charging trafficking in SNAP benefits.

"Although the Fifth Amendment does not contain an equal protection clause, the Supreme Court has construed the Fifth Amendment's Due Process Clause as containing an equal protection guarantee." *Mack v. Warden Loretto FCI*, 839 F.3d 286, 305 n.112 (3d Cir. 2016) (citing *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 616 (1991)). "Fifth Amendment equal protection claims are examined under the same principles that apply to such claims under the Fourteenth Amendment." *Abdul–Akbar v. McKelvie*, 239 F.3d 307, 317 (3d Cir. 2001).

The Equal Protection Clause directs that all similarly situated individuals be treated alike. *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985). Two independent legal theories exist upon which a plaintiff may predicate an equal protection claim: the traditional theory and the class-of-one theory.

Under the traditional theory, "[t]o prevail on its equal protection claim, [a plaintiff] must show that the Government has treated it differently from a *similarly* situated party *and* that the Government's explanation for the differing treatment does *not* satisfy the relevant level of scrutiny." *Real Alternatives, Inc. v. Sec'y Dep't of Health & Human Servs.*, 867 F.3d 338, 348 (3d Cir. 2017). Where, as

18

here, the classification at issue does not involve a suspect class or target a fundamental right, "rational basis review is the applicable standard." *Id.*; *see also Romer v. Evans*, 517 U.S. 620, 631 (1996) (stating that "if a law neither burdens a fundamental right nor targets a suspect class, we will uphold the legislative classification so long as it bears a rational relation to some legitimate end"). Under the traditional theory a plaintiff "must prove the existence of purposeful discrimination" by the defendant. *Keenan v. City of Phila.,* 983 F.2d 459, 465 (3d Cir. 1992).

Under the class-of-one theory, a plaintiff may advance an equal protection claim absent membership in a protected class if the plaintiff shows that the defendants engaged in irrational and intentional differential treatment of him when compared with similarly situated individuals. *See Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000). This theory allows a plaintiff to assert an equal protection claim regardless of protected class when the government irrationally treats the plaintiff differently from similarly situated individuals. *Id.* at 564; *Hill v. Borough of Kutztown,* 455 F.3d 225, 239 (3d Cir. 2006). To prevail on a class-of-one claim, the plaintiff must demonstrate that: (1) the defendants treated him differently from others similarly situated; (2) the defendants did so intentionally; and, (3) there was no rational basis for the difference in treatment. *Hill,* 455 F.3d at 239.

"To succeed under either theory, [the plaintiff] must demonstrate that it was treated differently from other similarly situated entities." *Rouse v. City of Pittsburgh*, No. 17-2587, 2018 WL 1448671, at \*3 (3d Cir. Mar. 23, 2018) (citing *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005) (selective enforcement); *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006) (class of one)). "Persons are similarly situated under the Equal Protection Clause when they are alike 'in all relevant aspects.'" *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008) (quoting *Nordlinger v. Hahn,* 505 U.S. 1, 10 (1992)). "[A] plaintiff need not 'identify in a complaint actual instances where others have been treated differently.'" *McLaughlin v. Forty Fort Borough*, 64 F.Supp. 3d 631, 647 (M.D. Pa. 2014) (quoting *Phillips v. Cnty. of Allegheny*, 515 F. 3d 224, 244 (3d Cir. 2008)). Rather, "[g]eneral allegations that a plaintiff was treated differently from others similarly situated are sufficient." *Shkedi v. City of Scranton*, No. 3:CV-14-2069, 2015 WL 1505660, at \*10 (M.D. Pa. Apr. 1, 2015). Determination of whether individuals are similarly situated is a "'case-by-case fact-intensive inquiry.'" *McLaughlin*, 64 F.Supp. 3d at 648 (quoting *Suber v. Guinta*, 902 F.Supp.2d 591, 607 (E.D. Pa. 2012)). "For that reason, some courts in this Circuit have stated that a final determination of this issue is inappropriate at the motion-to-dismiss stage." *Id.* (quoting *Borrell v. Bloomsburg Univ.*, 955 F. Supp. 2d 390, 405 (M.D. Pa. 2013)).

20

Here, the United States and defendants Torres and Perdue in their official capacities suggest that Monroe Grocery and Tavarez have not identified in their amended complaint any similarly situated stores that were treated differently.  In this regard, the United States and defendants Torres and Perdue in their official capacities point out that Monroe Grocery is not similarly situated to large superstores such as Walmart or Target.  While we agree with that assertion, Monroe Grocery and Tavarez allege facts that support an inference that they were similarly situated in all respects, except ownership model (public vs. private), to other stores that were not prosecuted for trafficking.  For example, Monroe Grocery and Tavarez allege:

> (1) "[t]here are publicly held businesses that fit the same SNAP Retailer size and other categorizations (aside from ownership type) as the Plaintiff's store";
>
> (2) the United States enforced the SNAP requirements on Monroe Grocery and Tavarez because they were a "privately held business" rather than a "publicly held business";
>
> (3) if they had been a publicly held entity, the United States would not have issued a charging letter;
>
> (4) "[t]he defendants deliberately chose to enforce SNAP violation sanctions against the Plaintiffs' private business entities, but under identical circumstances would chose [sic] not to enforce SNAP violations sanctions against a publicly held store";
>
> (5) the distinction between privately held and publicly held entities is arbitrary because there is no evidence that "a difference exists in the link between the different ownership structures and the existence of trafficking" ("Ownership status

21

has no relevant link to the existence [of] SNAP violations,
except that which falsely appears in statistics that fail to account
for the conscious decision of the Defendants to avoid charges to
publicly held companies.");

(6) while the SNAP regulations are neutral on their face, the
defendants apply them to similarly situated retailers in an
"unequal and unjust" manner; and

(7) the defendants' selective enforcement of the SNAP
regulations have harmed them.

*Doc. 15* at ¶ 50.

Given these allegations and mindful that "[g]eneral allegations that a

plaintiff was treated differently from others similarly situated are sufficient,"

*Shkedi*, 2015 WL 1505660, at \*10, at the motion-to-dismiss stage, we conclude

that the amended complaint sufficiently alleges that Monroe Grocery and Tavarez

were similarly situated to other entities that were not charged with trafficking in

SNAP benefits.[8]  Whether Monroe Grocery and Tavarez will be able to establish

that fact will need to be determined at a later stage of the proceedings.

The United States and defendants Torres and Perdue in their official

capacities also contend that Monroe Grocery and Tavarez have not alleged

intentional discrimination, which is also an element of both a traditional and a

class-of-one equal protection claim.  "To state an equal-protection claim, Plaintiffs

must allege (and ultimately prove) 'intentional discrimination.'" *Hassan v. City of*

---

[8]  The United States and defendants Torres and Perdue in their official capacities
do not argue that Monroe Grocery is not similarly situated to other entities because
of the distinction between a privately owned store and a publicly held corporation.

*New York*, 804 F.3d 277, 294 (3d Cir. 2015) (quoting *Washington v. Davis*, 426

U.S. 229, 241 (1976)).  "[M]ere unequal treatment or adverse effect" is not

sufficient. *Jewish Home of E. PA v. Centers for Medicare & Medicaid Servs.*, 693

F.3d 359, 363 (3d Cir. 2012).  Rather, the plaintiff "must show that the

'decisionmaker . . . selected or reaffirmed a particular course of action at least in

part because of, not merely in spite of, its adverse effects.'" *Id*. (quoting *Wayte v.*

*United States,* 470 U.S. 598, 610 (1985) (quotation marks omitted)).  But there is

"a difference between 'intent' and 'motive'":

> "[A] defendant acts intentionally when he desires a particular
> result, without reference to the reason for such desire.  Motive,
> on the other hand, is the reason why the defendant desires the
> result." 2 Harry Sanger Richards et al., *American Law and*
> *Procedure* § 8, at 6 (1922).  In other words, "intent" asks
> whether a person acts "intentionally or accidentally," while
> "motive" asks, "If he did it intentionally, *why* did he do it?" 1
> John William Salmond, *Jurisprudence* § 134, at 398 (7th
> ed.1924) (emphasis in original); *see also Black's Law*
> *Dictionary* 881 (Bryan Garner ed., 10th ed. 2014) ("While
> motive is the inducement to do some act, intent is the mental
> resolution or determination to do it.").  This fundamental
> "distinction between motive and intent runs all through the
> law." *Johnson v. Phelan,* 69 F.3d 144, 155 (7th Cir.1995)
> (Posner, C.J., concurring in part and dissenting in part).

*Hassan,* 804 F.3d. at 297.  In other words, "intentional discrimination does not

require an invidious motive." *Id*. (capitalization edited).  And "[w]here a plaintiff

can point to a facially discriminatory policy, 'the protected trait by definition plays

a role in the decision-making process, inasmuch as the policy explicitly classifies

23

people on that basis.'" *Id.* at 295 (footnote omitted) (quoting *Cmty. Servs. v. Wind Gap Mun. Auth.,* 421 F.3d 170, 177 (3d Cir. 2005) (quoting in turn *DiBiase v. SmithKline Beecham Corp.,* 48 F.3d 719, 726 (3d Cir. 1995)). "Put another way, direct evidence of intent is 'supplied by the policy itself.'" *Id.* (quoting *Massarsky v. Gen. Motors Corp.,* 706 F.2d 111, 128 (3d Cir. 1983) (Sloviter, J., dissenting)).

Here, Monroe Grocery and Tavarez allege that the United States and defendant Perdue created two classifications of retailers—privately owned stores and publicly held corporations. *Doc. 15* at ¶ 40. No publicly held corporations were found to have trafficked in SNAP benefits because the United States chose not to charge such publicly held corporations. *Id.* at ¶ 43. Rather, the United States "has made a conscious choice to afford them opportunity and ability apart from what small stores, like the Plaintiffs have." *Id.* at ¶ 49. The United States enforced the SNAP requirements on Monroe Grocery and Tavarez because they were a "privately held business" rather than a "publicly held business." *Id.* at ¶ 50. And, according to Monroe Grocery and Tavarez, if they had been a publicly held entity, the United States would not have issued a charging letter. *Id.* They further allege that "[t]he defendants deliberately chose to enforce SNAP violation sanctions against the Plaintiffs' private business entities, but under identical circumstances would chose [sic] not to enforce SNAP violations sanctions against a publicly held store." *Id.* In light of these allegations, Monroe Grocery and Tavarez have

24

sufficiently alleged intentional discrimination sufficient to survive a motion to dismiss.

Because the above arguments are the only arguments on which the United States and defendants Torres and Perdue in their official capacities move to dismiss the equal protection claim, we do not address the remaining element of such a claim—whether there is a rational basis for the alleged difference in treatment of privately held stores and publicly held corporations.

### 2. The Court should dismiss the due process claim.

The Due Process Clause has both substantive and procedural components. *Evans v. Sec'y Pa. Dep't of Corr.*, 645 F.3d 650, 658 (3d Cir. 2011). The substantive component limits what the government may do regardless of the fairness of the procedures that it employs. *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992). "'[T]he core of the concept' of due process is 'protection against arbitrary action.'" *Kaucher v. County of Bucks,* 455 F.3d 418, 425 (3d Cir. 2006) (quoting *County of Sacramento v. Lewis,* 523 U.S. 833, 845 (1998)). Executive action violates substantive due process only when the behavior of the governmental officer is so egregious and outrageous that it shocks the contemporary conscience. *Id.* As to the procedural component of due process, if the interest asserted by the plaintiff is within the scope of protection of life, liberty,

25

or property found in the Due Process Clause, "the question then becomes what process is due to protect it." *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000).

"The core of due process is the right to notice and a meaningful opportunity to be heard." *LaChance v. Erickson,* 522 U.S. 262, 266 (1998).  Additionally, due process requires an impartial decision maker. *Abdulrahman v. Ashcroft*, 330 F.3d 587, 596 (3d Cir. 2003) (stating that "it is well established that 'due process demands impartiality on the part of those who function in judicial or quasi-judicial capacities'" (quoting *Schweiker v. McClure*, 456 U.S. 188, 195 (1982)).

The right to "a 'fair trial in a fair tribunal is a basic requirement of due process'" that "applies to administrative agencies which adjudicate as well as to courts." *Withrow v. Larkin*, 421 U.S. 35, 46 (1975) (quoting *In re Murchison*, 349 U.S. 133, 136 (1955)).  "Not only is a biased decisionmaker constitutionally unacceptable but 'our system of law has always endeavored to prevent even the probability of unfairness.'" *Id*. at 47 (quoting *In re Murchison*, 349 U.S. at 136). "In pursuit of this end, various situations have been identified in which experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." *Id*.  "Among these cases are those in which the adjudicator has a pecuniary interest in the outcome and in which he has been the target of personal abuse or criticism from the party before him." *Id*. (footnotes omitted).

26

"Although the Supreme Court has held that the Constitution requires administrative agencies to be fair and unbiased, it has also held that the Constitution permits the investigative, prosecutorial and adjudicative roles to be combined in one agency." *Steidman v. Office of Thrift Supervision,* 37 F.3d 911, 924 (3d Cir. 1994) (citing *In re Murchison*, 349 U.S. at 135–36 and *Withrow*, 421 U.S. at 46–47). In *Withrow*, the Supreme Court held that "the combination of investigative and adjudicative functions" in "administrative adjudication" without more does not violate due process. *Withrow*, 421 U.S. at 47. And "[w]ithout a showing to the contrary, . . . administrators 'are assumed to be men [and women] of conscience and intellectual discipline capable of judging a particular controversy fairly on the basis of its own circumstances.'" *Id.* at 55 (quoting *United States v. Morgan*, 313 U.S. 409, 421 (1941)). This "presumption of honesty and integrity in those serving as adjudicators," must be overcome before the combination of functions can be seen as a violation of due process. *Id.* at 47.

In *Withrow*, the Court held that the combination of investigative and adjudicative functions in that case did not violate due process. *Id.* at 57. It noted, however, that the fact that "the combination of investigative and adjudicative functions does not, without more, constitute a due process violation, does not, of course, preclude a court from determining from the special facts and circumstances present in the case before it that the risk of unfairness is intolerably high." *Id.* at 58.

In their amended complaint, Monroe Grocery and Tavarez cite *Withrow* in support of their claim that Torres was biased against them. Although they titled their claim as a substantive due process claim, Monroe Grocery and Tavarez have not alleged facts that would support a reasonable inference that Torres's decision shocks the conscience. And they have not alleged that Torres based her decision on "constitutionally impermissible criteria such as race, religion, or the exercise of free speech rights." *Block v. Potter*, 631 F.2d 233, 237 (3d Cir. 1980) (addressing substantive due process claim in the context of denial of parole). Nor have they alleged that Torres based her decision on "frivolous criteria with no rational relationship to the purpose of" the SNAP program. *Id.* at 236 n.2 (noting that the denial of parole cannot be based on "frivolous criteria with no rational relationship to the purpose of parole such as the color of one's eyes, the school one attended, or the style of one's clothing"). Rather, based on the allegations in the amended complaint, we know that she based her decision, at least in part, on data gained from the ALERT system. And such data is among the types of data that is an appropriate basis for a decision. *See* 7 C.F.R. § 278.6 ("FNS may disqualify any authorized retail food store . . . from further participation in the program if the firm fails to comply with the Food and Nutrition Act of 2008, as amended, or this part. Such disqualification shall result from a finding of a violation on the basis of evidence that may include facts established through on-site investigations,

28

inconsistent redemption data, evidence obtained through a transaction report under an electronic benefit transfer system . . . .").  In sum, Monroe Grocery and Tavarez fail to state a substantive due process claim upon which relief can be granted.

Monroe Grocery and Tavarez's contention regarding the alleged bias of Torres is more appropriately considered as a procedural due process claim.  But contrary to Monroe Grocery and Tavarez's suggestion otherwise, Torres's record of deciding other cases does not support a reasonable inference that she was not impartial in this case for due process purposes.[9]  Monroe Grocery and Tavarez have not alleged facts to suggest that Torres had a pecuniary or personal interest, direct or indirect, in the outcome.  And in addition to the presumption that administrators are "'capable of judging a particular controversy fairly on the basis of its own circumstances,'" *Withrow*, 421 U.S. at 55 (quoting *Morgan*, 313 U.S. at 421), they have not alleged that she did not individually review the evidence relevant to their case in making her decision.  Further, given the allegations regarding the ALERT system, there was at least some basis for her decision.  Thus,

---

[9]  The United States does not contend that Monroe Grocery and Tavarez did not have a property interest in continuing to participate in the SNAP program.  Thus, in considering whether the amended complaint states a procedural due process claim, we assume for the sake of argument that they had such an interest.

the amended complaint fails to state a procedural due process claim upon which relief can be granted.[10]

### 3. The Court should grant Monroe Grocery and Tavarez leave to amend.

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. County of Allegheny,* 515 F.3d 224, 245 (3d Cir. 2008). The court "must provide the plaintiff with this opportunity even if the plaintiff does not seek leave to amend." *Id.*

We cannot say that amendment would be inequitable or futile in this case. Thus, we will recommend that the Court grant Monroe Grocery and Tavarez leave to file a second amended complaint to attempt to state a due process claim upon which relief can be granted.[11]

---

[10] Because we conclude that the amended complaint fails to state a due process claim upon which relief can be granted, we do not address the moving defendants' argument they are entitled to summary judgment as to that claim or Monroe Grocery and Tavarez's contention that summary judgment would be premature since they have not had the opportunity to conduct discovery.

[11] Any second amended complaint must be complete in all respects; it must be a new pleading that stands by itself as an adequate complaint without reference to the complaint already filed. Any second amended complaint will completely replace the original complaint. If a second amended complaint is filed, the amended complaint will have no role in the future litigation of this case.

## IV. Recommendations.

Based on the foregoing, we recommend that the Court grant in part and deny in part the motion to dismiss (doc. 18) filed by the United States. More specifically, we recommend that the Court dismiss the damages claims against the United States and against defendants Torres and Perdue in their official capacities. We also recommend that the Court not dismiss the equal protection claim for injunctive relief against the United States and defendants Torres and Perdue in their official capacities. We further recommend that the Court dismiss the due process claim for injunctive relief against the United States and defendants Torres and Perdue in their official capacities. Finally, we recommend that the Court grant Monroe Grocery and Tavarez leave to file a second amended complaint.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her

31

discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 3rd day of May, 2018.


**_S/Susan E. Schwab_**
Susan E. Schwab
Chief United States Magistrate Judge